Mr. Chief Justice, and may it please the Court, when Congress enacted ERISA, it identified a number of prohibited transactions and codified that understanding in 29 U.S.C. 1106. In Congress's view, these transactions posed a special risk of being potentially harmful to the plan, generally because they involved a party in interest, which includes a fiduciary's relative or an officer or an owner of the plan, or a person providing services to the plan. Petitioners here have identified a transaction that falls within the text of Section 1106, and the Second Circuit's decision to dismiss that claim prior to discovery was incorrect for three reasons. First, text and structure. Congress frequently writes laws where it puts liability in one part of the statute and exceptions to liability in another. And when it does so, this Court has time and again held that plaintiffs plead in proved liability and defendants plead in proved exceptions to liability. Second, precedent. In Keystone Consolidated and Harris Trust, this Court made clear that the prohibited transaction provisions provide for categorical rules. What the Second Circuit's approach does is it converts those categorical rules into qualified ones. And that brings me to the final reason for reversal, which is that they're not just qualified prohibitions, but they're qualified based on exemptions that involve information that plaintiffs cannot know and do not know prior to discovery. Information like who the counterparties are in a cross-trade, or how large a block trade is, or what asset classes are in a block trade, which is exactly why, when Congress wrote these provisions, it intended for petitioners to plead in proved under Section 1106 and for defendants to plead in proved under Section 1108. For these reasons, Your Honor, we ask this Court to reverse the judgment of the Second Circuit. I welcome the Court's questions. If we were to read your complaint as it is, what exactly is the injury? The injury is that, with regard to the prohibited transaction provisions, Your Honor, the injury is that the plans here engage Fidelity and TIAA, who are parties in interest, and that violates Section 1106A1C. So how did that harm the plan? It harmed the plan because Fidelity and TIAA didn't simply just provide record-keeping services to the plan. They bundled them with investment products. And those investment products, in turn, had operating expenses. And those operating expenses were then shared via revenue sharing to the plan to pay for record-keeping. Now, that bundling resulted in Fidelity and TIAA pushing—this is on page 22 of the Joint Appendix—pushing its own products, its own actively managed products, leading to higher Your theory means, I think, or at least the other side says, that it's a prohibited transaction just to have record-keeping services. Correct, Justice Kavanaugh. And that seems nuts, right? That's what they say. And it does, to me, seem nuts, too. So what do we do with that? Well, Justice Kavanaugh, let me try to unpack that. I think the starting point would be to look at the text of the statute. And I think for outside service providers, that would fall under 1106A1C, something that the fiduciary shall not do. Now, that doesn't sort of provide a per se bar, and we don't think it provides a per se bar. Instead, it says, look, that gives plaintiffs an opening to open the door to plead a claim. That doesn't mean that they'll succeed on liability. 1108, that's the purpose of 1108. Of course, but just to state what's obvious from the amicus briefs, and we've heard before in other contexts, they're worried about the expense of litigating this past the motion to dismiss. So it's not enough, they say, at the motion to dismiss to say, you're not alleging to Justice Thomas' question, you're not alleging excessive or unreasonable amounts paid for these record-keeping services. You're just alleging that we had them. Well, of course we have them, right? Everyone has them. You have to have them. So it's an automatic ticket, pass, go, go immediately to discovery, summary judgment, huge expense. These universities, other defendants are saying that's just completely absurd and ridiculous, which is the starting point of Judge Livingston's analysis was looking at trying to make sense of all this in context, I think. Now, maybe there's a good answer to that, but it's kind of an automatic ticket when you assert that a plan is record-keeping services to get past the motion to dismiss. Well, Your Honor, maybe I can back up on that, Justice Kavanaugh, and sort of answer it in two ways. The first way is to say that I think as we recognize on page 19 of the Joint Appendix, record-keeping is a necessary service, and then there may be certain moments where you want to outsource that to an outside source provider. You don't have to, but you might want to. But if you do that, if the fiduciary does that, then it's not a blank check. What 1106 and 1108 say is it's not a blank check, and if that transaction is subject to challenge, then 1108 provides the necessary exemption for you to marshal. Now, I think the sort of policy— You can't just say—sorry to interrupt, and I want you to continue, but just to get this point—you can't just say you're not alleging that the fees were excessive at this point on this claim. That's not going to be enough for you to get it dismissed, correct? Well, I think that as we note in our— And you've really suffered no harm to Justice Thomas's point either. Well, Justice Kavanaugh, and I think this is consistent with Justice Thomas's point as well, that there are other guardrails that we point to, things like fee shifting and standing and the enormous expense of even bringing a case that would deter this. And I think the best practical proof of this is that the Eighth Circuit has embraced this for 15 years, and we don't see any evidence of it happening. The response and their amicus briefs— And the amicus briefs, maybe the—you know, amicus briefs might engage in puffery, understandably. I mean, I understand that, I'm not saying understandably. But they're painting a pretty bleak picture. The American Benefits Council, the universities who are saying this is a huge problem for the universities, this expanded litigation threat would be near limitless because every college and university relies on third-party service providers. And because the contract's mere existence, mere existence would be enough to force these defendants to proceed through expensive discovery at risk of opening the floodgates to burdensome, right? And then they say, rightly, the burden of these suits takes away money from, you know, its tuition, its faculty, et cetera. The money comes from somewhere. So that's just in one context. It's other contexts, according to the Benefits Council. Maybe they're all wrong, but, you know, I take it seriously. I listen to what they say and want to at least get your response. Certainly, Justice Kavanaugh, and two responses to that. The first is I think the court has, in fact, dealt with a similar issue in Harris Trust. In Harris Trust, that was a case about whether, for a prohibited transaction claim, one could hold not simply just the fiduciary liable, but also the party in interest. And many amicus briefs were filed in that case, and the respondents themselves made the point that, look, if you can hold us liable, hold parties in interest liable, then that's going to create these devastating policy consequences. And the court rejected that. The court said on page 254 that Salomon, the defendant, submits that the policy consequences could be devastating. Faced with the prospect of liability for dealing with the plan, parties in interest could refuse altogether to transact with the plans. But we know that that hasn't happened. Since 2000, when Harris Trust was decided, we've seen respondents themselves agree on this point that there are, in fact, more risk of plans being offered. There are more— Mr. Wendler— You have a formal argument, all right? And maybe you're going to win on your formal argument. These are exceptions, and exceptions are usually affirmative defenses, and, you know, we could write an opinion that says that, end of case. It could be a nice, short opinion. But it really does seem to close its eyes to the reality of what's going on. And that's what I'd really like you to address. Every—I don't know why this would be confined to the universities, but all sorts of employers with defined contribution plans offer the employees a menu of funds in which they can invest. And so every employer who does—and there are always going to be record-keeping expenses relating to these funds, and I don't know whether it would be possible, realistic, reasonable for Cornell or any other employer to do the record-keeping for Fidelity and for TIAA. They have—these are their funds. They're going to do the record-keeping for it. So all you need to do in your submission is plead something that is perfectly innocuous in and of itself. Now, maybe the fees are too high. Maybe they're not. That's a different question. But all you need to do is plead something that seems to be on the surface, completely innocuous. That's enough to get you beyond the motion to dismiss. And then, you know, how many lawsuits just like this one did the Schlichter-Bogart law firm in St. Louis file against universities? Well, Justice Alito, let me try to untangle that one. Well, answer the second question first. As to how many lawsuits it filed. How many lawsuits just like this did that law firm file against different universities? I think it filed a significant number. I don't have the specific number off the top of my head. But I would say that 12—excuse me. But I would say— I thought it was 20. But it doesn't matter. So, you know, you file all these lawsuits, and maybe the universities are going to say, look, it's going to cost us a lot of money to go through the discovery. We're just going to settle. And so there's a payday for the law firm now. Maybe this is not something that we should worry about. Certainly, Justice Alito. Well, I think, first of all, in the amended complaint, we point out that not every university is subject to suit. There are examples such as Loyola Marymount, California Institute of Technology, Purdue, that have, in fact, I think, consolidated to a single record-keeper, have had the record-keeping fees below or at the industry benchmark. That's not the case— Let me ask you this, counsel. So you have a complaint. You've got to file it. And my colleagues make a very good point about how it can be easy to overcome motion to dismiss. But if you're referencing a contract in a complaint, there's a lot of case law out there that allows district courts to review the contract. And perhaps with the full contract before it, it could, as a matter of law, find that the affirmative defenses apply. Would you agree with that? I think so, Your Honor. And I think this is—  And then there's also a lot of case law that says that a district court can convert a 12B6 into a summary judgment when defendants request it at the outside of the case in appropriate circumstances. Would you agree that that would be appropriate in some cases, too? I think that would be appropriate. That's within a district court's discretion. Thank you. And— Oh, I just wanted to ask you, so, you know, obviously, there's some concern about why on earth Congress would have structured it that way. Do you want to address that? Yes, certainly, Justice Barrett. I think it was because pre-ERISA, as Keystone Consolidated points out, pre-ERISA, the standard was the arm's-length standard of conduct. But that proved difficult to police. It led to a rife of abuses. Abuses were pervasive. And so I think Congress wanted to prescribe these simple and categorical and straightforward rules and prohibitions that provide plaintiffs a cause of action and recognize the information asymmetry between the fiduciary and the beneficiary. And I think this is a—  Just go ahead. Sorry. I think this is just one example of that. As we point out, even with respect to the specific exemption at issue here, 1108B2, B2 includes another provision, B2B, which specifically says and contemplates that information regarding compensation, regarding a necessary arrangement, goes from the party in interest to the fiduciary. It never goes to the beneficiary. Mr. Wang, following up on Justice Gorsuch's points, is there anything in this statute or in the rules that would prevent a defendant in one of these cases from seeking an expedited summary judgment ruling from the court? No, there would not be. So the university or whoever could simply respond, no, we really do have reasonable fees attached to some documents, and that could be the end of the case. We're not necessarily talking about the kind of case that would go on and on and be a big expense. Certainly. Certainly. That's correct, Justice Jackson. I think district courts have the discretion to have limited discovery, to order an expedited motion for summary judgment. They'd do that with no discovery? Pardon me? Can you— They'd do that with no discovery? I think that would be a harder call. But they could do limited discovery that's just targeted to that issue, and the defendant can start the ball rolling by moving for summary judgment to include documents that would prove that it's reasonable and necessary, correct? Entirely correct. And Justice Kavanaugh, if I can just respond to your question about why doing it with no discovery may not be appropriate in this particular case. Because in this particular case, what the Second Circuit faulted petitioners for being able to do was to show how services rendered corresponded with fees and how you could benchmark one with the other. And I think that it's reasonable to say, well, if you're going to ask that question, at least give us the contract. Give us the contract so we can understand what fees and what services were available. And that's not turned over prior to discovery. That's something defendants routinely do not turn over. Paul, you're— Sorry. No, I was just going to ask about the information asymmetry and those concerns, and also the sort of bigger structural concern. We're focusing here on one type of transaction and one exemption. But as I look at the statute, there are 21 separate exemptions in 1108B. And I guess I'm trying to figure out if there's any principled basis for saying the burdens are different here in this kind of service provider contract than they would be with respect to other exemptions. Do you understand what I'm saying?  Yes, yes, Justice. Wouldn't we have to have a consistent rule about whether the plaintiffs bear the burden or the defendants bear the burden of proving exemptions? Entirely so, Justice Jackson. I entirely agree. And I think that this statute provides the reason why, which is to say, look, there is an information asymmetry. The information asymmetry might be lessened as to some exemptions, maybe B-2, maybe B-1. But it does exist, and given the text and structure— And some of the exemptions, I mean, it would be really, really hard for us to determine that the plaintiff has to plead them because they don't have the information. Correct. Exactly so. Correct. What do you think of the government's point about—and this is following up on Justice Gorsuch's suggestions—the government's point about Rule 7A-7 and that use, the Chamber's amicus brief says even the most ardent scholar of civil procedures likely never heard of that, but it is cited in the government's brief as a tool to mitigate the problems that have been identified. What do you think? Certainly, Justice Kavanaugh. I think this goes to Justice Gorsuch's understanding that district courts can have a wide variety of tools at their disposal. And I think Justice Jackson as well said, perhaps it's limited discovery, perhaps it's an expedited motion or summary judgment. Perhaps it is this, according to the Chamber, arcane rule of civil procedure, or perhaps it is an additional sort of pleading. But I think that these are all sorts of tools that are within a district court's discretion given the complaint and the specific pleadings at issue and the circumstances between the  Thank you, counsel. Justice Bromley? Before Varity, were there any suits like this? I am not aware of that, of any suits like this. How do the factors the Court emphasized in cases like Twombly and Iqbal come into play here? We seem, we were interested and did seriously tighten up the pleading standards there, and I wonder if that's something we should take into account in deciding how to allocate the burden of going forward here. Certainly, Chief Justice Roberts. I think that the way that we would see it, if you will, is to imagine if you have sort of three boxes of types of complaints. Box one is the bare bones complaint that says, I'm going to sue you because you did record keeping. And box two is, I think, something more like what we see here, is to say, look, I'm going to bring a suit because I see that record keeping is tied to revenue sharing, and revenue sharing is itself tied to the investment management products that you offer. And you happen to offer products that promote your own services. That's box two. And then box three is, everything in box two, plus give us allegations as to the services and the fees and benchmark them based on information you don't know. I think what we would say, and I think this comes through in the government's brief, is that we would say that we don't see any in box one. We don't see any cases in the Eighth and Ninth Circuit, and that is because of the guardrails that we talk about. But if we were to start seeing them, I think within the many tools in a district court's discretion, whether it's limited discovery, pick, ball, and Twombly, rule seven, there's a number of ways to manage that litigation to make sure that box one does not get out of hand. And if I could briefly sort of respond to one point that you made in your question, Justice Thomas. I would say that before Verity, I think Congress was nonetheless concerned with these types of transactions, and not simply necessarily just a service provider transaction, but I think more broadly as to regarding the parties in interest, which is a fiduciary's relative, an officer, an owner, and it combined this corpus and said, look, these are prohibited. And I think those types of lawsuits don't have a specific number off the top of my head, but could have happened pre and post Verity. Justice Alito, you have further? Yeah. What are the guardrails that you think are in play here? Certainly, as we point out, I think there are a few. One is simply the expense of litigating one of these and bringing one of these cases. Some more formal guardrails include fee shifting, standing, sanctions. So those that we outline in our briefing all provide, I believe, various deterrent mechanisms to the bare-bones allegation that I think the Court has expressed some concerns about. So Rule 11 is one. Standing is another one. What do you think you have to plead to establish standing? Do you have to plead anything more than that I am being charged for record-keeping services? Do you think you have to prove that the charge is excessive in order to have standing at the pleading stage? Well, Justice Alito, I think that that's a little bit of an open question after this Court's decision in Thole. Certainly, I think with Thole, perhaps one takeaway is that, yes, you would have to show, because simply alleging record-keeping would be pleading an injury of law rather than injury of fact. So I think that that is a possibility. All you have to plead, you have to plead, I was charged too much, and that's enough to establish standing. I think in the appropriate case, yes. However, I think that, again, this goes back to the other guardrails that might be there, which are fee shifting and questions about sort of the expense of even bringing one of these cases. So I think these all work together to explain why in the Eighth Circuit and the Ninth Circuit we don't see cases that have these sort of bare-bones threshold complaints. And what do you think about the procedure that the Solicitor General recommended involving Civil Rule, Civil Procedure 7? Do you think that that is something we should say is a good practice? I think that that is one of several options that would be available to a district court to address perhaps these concerns over a bare-bones complaint. But a district court could do that. A district court could say, after the answer is filed, I want a reply, and then rule on whether it can be determined based on the pleadings if the defendant is entitled to judgment on the pleadings. Certainly, Your Honor. I think that's how we would see it. Of course, a district court could have other options available to it, such as limited discovery or an expedited summary judgment motion as well. Do you think that that should be mandatory for the district court to go through that procedure? Well, I'll ask the Solicitor General that. I have no more questions. Justice Sotomayor? I do. This isn't that easy a case in my mind. You're right about the general rules we've set, but this statute is slightly different because many of the cases that we've seen before, the prohibitions were on one page and the exemptions were in a different section, but the prohibition didn't reference the exceptions the way the statute does. It says, except for the exemptions in 1108, you can't do the following. On the other hand, there's 21 exemptions within 1108, but I also understand there's dozens, if not a hundred more, that have been passed by the Department of Labor. And if we accept the other side's position that you have to prove the case and say there's no exemption, I don't know how you know that. You're right. How will you know which exemptions are pertinent or not, correct? Correct. And so that's really the problem in this case, which is either whatever we decide, someone's going to be potentially unfairly treated because you have no plaintiff has a way of knowing what all the exemptions are and what potential exemptions the other side could pick. Certainly, Justice Sotomayor, and I think that we... Let me go on, okay?  Apologies. Okay, that's a given. But here, it's pretty clear that you alleged and you thought you had some sort of burden because I read your very extensive complaint and you basically point to a lot of other industry fees and that the fees were unreasonable. You allege it's unreasonable. You show a lot of other fees. I'm not quite sure still, and I will ask the government this, under normal pleading standards, I would have thought this was enough. I think that the Second Circuit was thinking that it has to be pled with Trombley and Ipcobal as a fraud and that you needed more particularized information relating to the nature of the services in total, some information that you say you couldn't have known. You just knew how much was being paid and you compared it to what other people were paying. Comparable plans, yes. Exactly. So if I have a problem with that part of it, that the Second Circuit may have asked for more than you needed to plead, what do I do? Even if I accepted their proposition that you need to allege for whatever reason, pleading standard, injury standard, that you have to allege something more than that they had a transaction. Do I get to address that or I don't? What am I doing here? Certainly, Justice Sotomayor. I think that what you're doing here is, first, I think you would reverse, you would ask this court to reverse the judgment of the Second Circuit and you'd reverse by saying, look, if these are enough under Iqbal and Twombly and it involves unreasonableness, then whatever rule you apply, we would still say that there was a legal error here. But if I could get back to, I think, maybe the first part of your question, which is perhaps the relative weakness of our decision about the acceptor's otherwise provided language at the top. First, I think that precedent answers this point. And precedent answers this point in a couple of different ways. One is respondents have provided no cases where that actually changes the calculus. It turns the words acceptors otherwise provided magically turns the word exemptions into elements. There's no case on that point. In fact, the cases like Atlantic, Richfield and Schlemmer make fairly clear that all that's doing is saying what happens when things clash. It doesn't expand or contract the liability provisions at all. And I think sort of maybe as a concluding point on this point, that is reinforced by the structure and the complexity and the nuance that's provided in 1108 that involves an information asymmetry that, again, cannot be addressed prior to discovery. I'm going to ask the other two about the Second Circuit's actual ruling, which was that with respect to this provision, you have the burden of showing unreasonableness, but it reserved consideration of whether there were other exemptions that you didn't bear the burden about proving. I don't know how it got there at all, and I'll ask the government and your adversary how we do that. But Cook did say that establish a narrow ruling for criminal pleadings. I don't think there's any case that ever has applied it to civil exemptions, correct?  So it's hard to rely on Cook, but the essence of its thinking was if a prohibition looks like it's... you can't really tell it's illegal or not because the exemption here says you can have these relationships, you can just have them with reasonable fees, then you need for the government to prove they were unreasonable. Why wouldn't that apply here, that concept? Why wouldn't Cook's... Observation. Yeah, I think it wouldn't apply, not simply just because of the criminal-civil distinction that we talked about, but also for the information asymmetries that you mentioned, and it doesn't sort of... Really, I think the response you're asking this court to sort of carve out the statute in a few different ways, to try to gerrymander it by saying, look, we'll put the B-2 exemption, we'll treat that as an element, and we'll try to carve out service providers, and then we'll stitch together 1106 and 1108. But that's not how the statute is written, and certainly that might lead to some results. We don't see that happening in the Eighth or Ninth Circuits, but if it does, I think that's in Congress's province to address. Thank you. Mr. Cahill? Justice Gorsuch? Just in terms of the litigation in the Second Circuit and the District Court, there were other counts, right? So the complaint... And correct me if I'm wrong, I might be mistaken on this. There are other counts about unreasonable or excessive fees, but this count, Count 4, was just prohibited transactions, and that's the only issue we are addressing here, correct? Correct, Justice Kavanaugh. Okay, thanks. Justice Jackson? You've been asked a few questions that indicate concerns about the expanded litigation threat in this circumstance, and I guess I'm wondering whether those concerns are really consistent with what Congress itself was thinking in the context of this ERISA statute. You know, Congress set up fiduciary duties. It created a series of remedies for planned participants to enforce those obligations, and at the beginning of the statute, it says that it was, quote, providing for appropriate remedies, sanctions, and ready access to the federal courts. So it appears that Congress did not really share the concern about the litigation in this area that the amici in this case have raised. That's right, Justice Jackson. I think that with respect to Congress and this court's understanding of Congress's intent in ERISA, it's to provide a broadly protective and remedial statute and provide an avenue for plaintiffs to enforce ERISA's terms and conditions, and I think it's telling that simply that respondents in their amici, especially their amici, have in fact advocated for changes to 1106 several times in the halls of Congress. Congress has declined to do that. It's kept the scheme as it is, and I think applying the text as written is appropriate in this instance. Thank you. Thank you, counsel. Ms. Dubin. Mr. Chief Justice, and may it please the court. The text and structure of this statute demonstrate that the 21 exemptions and 1108B are the fiduciary's responsibility to plead and prove, but as already discussed this morning, that straightforward reading raises a practical concern for the subset of claims that are at issue here, that plaintiffs could obtain discovery simply by alleging a routine service provider transaction. Importantly, that theoretical concern has not materialized in the real world, likely because courts have the necessary tools to weed out and deter bare-bones complaints. And in all events, we don't think that concern justifies adopting respondent-strained reading. Critically, service providers are just one of the nine categories of parties in interest. The rest are plan insiders with whom transactions carry obvious risks of favoritism and abuse. All the usual interpretive rules indicate that Congress intended the fiduciary to justify such transactions. Respondent's elements-based approach would thus undermine prohibited transaction provisions as a whole based on pragmatic concerns about one sliver of party interest transactions. That approach is fundamentally unsound. I welcome the court's questions. Why would Congress say it's unlawful for existing service providers to be employed in this way? Sure, I don't think Congress is saying it's unlawful for service providers to be employed in this way. What Congress set up is a scheme, and this court has recognized that several times, including in your decision in Harris Trust, that these types of transactions have a potential of injuring the plan. It's very easy to see that with respect to insiders, as I just mentioned, but it's also true with respect to service providers. You can pay service providers excessive fees with people's retirement money. The scheme Congress set up set out specific transactions that are prohibited and then exemptions from those transactions that you can show that a particular transaction was reasonable and necessary. In that context, it makes perfect sense to put the burden on the fiduciary to show that the transaction was justified and reasonable. The fiduciary is the one who enters into the transaction. The fiduciary is the one who has information about the transaction, and the fiduciary is the one who's charged under trust law with ensuring that these transactions are an appropriate use of people's retirement money. So do you think this is just a mistake on Congress's part? In other words, you're saying this scheme makes perfect sense with respect to insiders, but when you apply it with respect to these third-party providers, service providers, you know, all of a sudden, you are potentially making libel a really big category of innocuous conduct. Is this something Congress just didn't understand it was doing, or, you know, do you have a theory for why Congress wanted to go that far? We don't think it was a mistake. We think it was entirely deliberate, and that's because at trust law, the fiduciary had the burden to justify delegations to third parties. The fiduciary was hired for his skill and for his ability to manage resources appropriately. He is allowed to delegate. That's consistent with the restatement second of trust, but when he does so, he's the one who has the burden to justify it, and that's all 1106 and 1108 do, which is you can engage in this transaction, but it's the fiduciary who carries the burden to justify it, so I don't think it's a mistake at all that these service providers were included among the other parties of interest who are all obvious insiders to the plan. Your broader argument, or the sort of remarks that you made initially, seem to suggest or assume that there has to be consistency in the rules about burdens across the different kinds of parties of interest and across the different exemptions. Can you say more about why you think that's the case? Absolutely. I don't see any textual basis here to slice and dice the way the Second Circuit suggested, where it just focused on this one particular sliver of transactions. The textual hook that they're using, except as provided in 1108, equally applies to all the exemptions, so I don't see how you would single out one exemption. That said, we are very concerned with the effect on the other types of parties of interest, and we do think that's a useful tool for interpreting all of the exemptions as a whole. So the bottom line on that is, I don't see a basis for why the Second Circuit did what it did, but it is really important that if the Court is inclined to do something more similar to the Second Circuit, even though I can't see exactly the doctrinal basis, it wouldn't let that expand to other parties of interest. How do we write this opinion? Let's assume we start with, as you want us to, it is the fiduciary's responsibility to prove the reasonableness of their fee. That's their burden. But what do we say about the plaintiff's pleading? And how do we say it? Meaning, is it enough just to say it violated 1106? You seem to suggest not. And then how do I explain why not? Sure, absolutely. And then my last question, and you heard it before, was this pleading enough? Sure, absolutely. Let me address both pieces, and if I don't get to the second piece, just let me know. We think that this is a straightforward opinion to write along the lines Justice Alito was suggesting. This is a straightforward prohibition and exemption structure, and these are affirmative defenses. We think that district courts already have the tools to deal with bare-bones allegations in Category 1 that we were talking about before that just suggest a routine service provider transaction. They already have the tools, and if the court wanted, it could just leave them to continue doing and applying the plausibility framework that they're already applying. But if the court did want to say anything about it... I would say the following. They may get it, but I also know plaintiff's counsel often will come in with the minimum, and if the minimum is just they have this prohibition, how do we avoid that? What do we have to say to avoid that? Yeah, if the court were to say something about it to address the that's nuts example from Justice Kavanaugh, I think the way to address it would be to explain that the plausibility framework precludes such complaints, and I think that's because that complaint on its face obviously implicates an affirmative defense, and the plaintiffs haven't said anything to suggest why the underlying conduct will ultimately be found unlawful. This isn't treading or breaking new ground. This is already done in various cases and various statutory schemes involving affirmative defense where a petitioner or a plaintiff fails to give any explanation of what's going on. Give me some examples. Sure, so I think NIAV versus Capital One which I'll give you the site is 942 F. 3rd 480 is a great example. It's dealing with an analogous structure in the Fair Credit Reporting Act where the exemptions are affirmative defenses, but a plaintiff still has the burden to say something about their theory of why it doesn't apply. I think another helpful context is that in a sanctions context, courts already many, many circuits look to whether a plaintiff failed to investigate an obvious alternative explanation including an affirmative defense. Well, to the extent that you're saying that the plaintiff is going to need to present an affirmative defense and say something about why it doesn't apply, it seems to me that you're three-quarters of the way to Ms. Zaharsky's position, so I guess I don't see that as a typical Iqbal maneuver. So this is absolutely critical. Our position is not three-quarters of the way to my friend on the other side's position, and there are two big reasons why. The first big reason is that my friend's position makes these exemptions into elements. That turns them into the plaintiff's burden to plead and prove all the way through, and they forthrightly admit that. That would be a sea change in the way that these provisions are applied. No court of appeals, including the Second Circuit below, has adopted that approach, and we think it would strongly undermine these provisions. But even as to the pleading standards, even as to these service provider transactions, our approaches are meaningfully different. I think here it's very helpful to think about the complaint at issue in this case, which, as you were talking about earlier, does allege excessive fees that were far above the industry benchmark, and gives reasons to think that those fees were excessive, including that the defendant used multiple service providers when they could have used one. We think that's sufficient to say that this explanation is not obvious. However, what respondents think, and what the Second Circuit's held below, is that this complaint failed because they didn't go on to explain why that excessive fees charged weren't justified by the quality of the services provided. And the theory is something like, if the record keeper is providing the Cadillac of services, maybe these excessive fees are justified. We don't think that plaintiffs carry that burden. We don't think they carry the burden to negate the exemption in that wholesome way. I don't... Please, go ahead. I'm a little puzzled by what I've understood you to say that maybe I don't understand it. Why should the plaintiff have to do anything more than plead the elements of 1106? So in a case like this, the plaintiff simply has to plead that the fiduciary with respect to the plan shall not cause the plan to engage in a transaction if the fiduciary knows or should know that such transaction constitutes a direct or indirect furnishing of goods, services, or facilities between the plan and the party in interest. So all they have to plead is that the fiduciary here caused the plan to engage in the furnishing of goods, services, or facilities by TIAA and fidelity. End of the elements. That's all you have to plead. Why would anything more be required? Sure. It's because I don't think that complaint plausibly alleges entitlement to relief. I think the problem with that complaint is that you're alleging a routine transaction with a service provider for services that they provide on the market. See, that's the problem I have, too. Which is, in Quick Ball, there was an obvious explanation that would negate the existence of a clause of action with forget-about-affirmative-defenses. You didn't even get out of the gate. Was there a contract combination conspiracy under the Sherman Act, or was it unilateral action in parallel? Okay. That's one thing. Here, you're asking for somebody to plead, essentially, away what you're calling an affirmative defense, not its elements. I think that's what Justice Alito and Justice Kagan are getting at. And I'm unaware of this Court having endorsed that move before. And it seems to me doing so would have ripple effects we cannot presently anticipate transubstantively across the law with respect to affirmative defenses. Thoughts? Sure. I appreciate the Court's concerns, and, of course, we're cautious about spillover consequences in other areas. Again, I think this is already what district courts are doing on the ground when they encounter a complaint that is just their own. That's one thing. Leading it alone is one thing. Saying something about it is another. I completely agree it's different when things are happening sub-rosa rather than announced by the Court. Not sub-rosa. No. In the normal course, lower courts developing the law, and when splits arise or occasion arises, we address it. But we don't. First view, review, come on, right? Let me just try to situate this entire line of questioning within our case, which is we are not urging the Court to say anything about this. We don't think the Court needs to. We think the statutory answer is clear, and for the reasons Petitioner's already given, these are affirmative defenses, these exemptions. We are four justices who are concerned with this and do think it's appropriate to say something. We do think this is the right answer that's happening on the ground, but I absolutely appreciate the concerns you're articulating. Thank you, Counsel. Well, which is it? Earlier you said that you have to say enough to make it plausible, and that suggests to me that that's a judicial requirement. The Court has to if we say that's the standard, the Court has to look at it and determine whether it's plausible. Is that your answer, or is it we don't have to say anything? I was differentiating between what this Court says in an opinion resolving this case and what district courts do on the ground. I agree that's the first response that I gave, which is that district courts on the ground should be evaluating plausibility, and I do think if you failed at all to respond to an obvious explanation for the conduct that would render it unlawful, that is a problem for a plaintiff, and I think that's perfectly within the judicial role to recognize that, and I think district courts and lower courts on the ground are doing this already. As to what this Court says in an opinion, I think it depends on how the Court is weighing the various spillover consequences at issue here, but this is all after you've gotten to the point, I think, where you've already rejected Respondent's approach, which I think simply doesn't work as a matter of the statutory scheme and has its own pragmatic consequences. This is simply whether you want to address the this would produce nuts results for these bare-bones complaints, and I think this is the right answer. Justice Thomas? Well, I'm still puzzled by your argument, because a lot of your answer is, well, look at what the district courts are doing on the ground, but is what the district courts are doing on the ground correct? That's what I'm interested in, and I understand the argument that all that's necessary to be pled are the elements of the provision that creates liability, and those are the ones that I set out, and they say nothing about the reasonableness of the fees. I don't know how the reasonableness of the fees gets into the pleading requirement if that's the way we go about it. Sure, so I think looking at this court's decision in Iqbal, the language used there with the claim of spatial plausibility when the plaintiff sees factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. I think that's the standard the lower courts are looking to. Reasonable liability as to the elements, not reasonable liability as to affirmative defenses that may or may not exist and may or may not be asserted. Anyway, I'll leave that there. There's been talk about the fact that there are ways, I mean maybe those who have concerns about the practical implications of deciding the case of reversing the Second Circuit's rule are, those concerns unfounded. Maybe they are. Okay, let's assume that there's some basis to it and what you propose with Rule 7 does suggest that the government thinks there's a basis to it. If all you have to do is plead what I've just outlined, what are the things that district courts can permissibly do that would alleviate these concerns? So, in addition to applying what we think is the rule of Iqbal and Twombly in this context, I would say that they could also, obviously, engage in fee shifting. They can sanction attorneys who bring meritless lawsuits. I think both of those are very much deterrent to these types of bare-bones suits being brought on the ground. I think it's very... Do you think Rule 11 sanctions are really going to do the job here? I do, if plaintiffs begin to bring bare-bones complaints. I'll point you to the Tenth Circuit, which said, you know, part of a reasonable attorney's pre-founding investigation must include determining whether any obvious affirmative defense bars the case. The Seventh Circuit, the Fifth Circuit, and the Sixth Circuit have all said the same. I do think a failure to investigate an obvious, like, affirmative defense is a problem for a plaintiff's case. And I think, you know, going back to what you were asking me, I do think it's relevant that Twombly and Iqbal were about the elements. That was what was going on in those cases. But the thing that was motivating the court, the thing the court was concerned about was that you're coming into complaint without a plausible case against someone, that you have no theory of wrongfulness. And I think these bare-bones complaints share the same problem. Just on your... Petitioner's counsel said that maybe the unreasonableness of the fee has to be pled because you have to plead an injury in fact. Do you accept that? I think there's a fairly... This goes off to Justice Thomas' question earlier. I think there's a pretty obvious injury in fact from claims like this, which is, if you're charging excessive record-keeping, that's coming from the planned assets. No, no, no. You misunderstand. You'd say to us that the only pleading standard is the 1106 violation. The 1106 violation does not talk about the reasonableness or excessiveness of the fees. So the elements will not address that. So if that's all you plead, that's a bare-bone complaint, which I think meets the Eighth Circuit standard, correct? Yes. All right. If we are concerned about the consequences of that, that we're going to have an explosion of bare-bone complaints, do we say something like what your colleague is saying, that that's not enough because you also have to plead injury in fact and that obviously will take you to the unreasonableness or excessiveness of the fees? I think that is one option available to the Court here. And what would be the collateral consequences of that option? So I think some of these claims, like these are about excessive fees coming from the plan. And I think, you know, that obviously applies in this sort of defined contribution plan. You look at a defined benefit plan, like what was going on in Seoul, you could still have someone engaging in excessive record-keeping fees and the fiduciary is not being careful with plan assets. And that might mean the fiduciary is the wrong person to be in charge of this plan, but they're not being careful with plan assets. And one of the equitable remedies is replacing the fiduciary. I think that's a harder case for how you think about the injury in fact construct playing out there. Justice Kagan? And when you say these bare-bones complaints, are you talking about the same complaints that Mr. Wang said was in Box 1? And what are those complaints exactly? And what takes you out of that category? Sure. And let me be very clear about this. I think Box 1 is a complaint that just alleges a service provider transaction for routine services. That's Box 1. Box 2 is a complaint that includes allegations like the ones we see here, that the fees are excessive four to five times the industry benchmark, that there's a reason to think the plan is paying excessive fees, that they're using multiple recordkeepers than they could have used one, that he didn't engage in a competitive process for these recordkeeping services. Box 3... To me, that doesn't sound like a bare-bones complaint. Are you suggesting otherwise? No. That's exactly our position here, which is that Box 2 is where the complaints should be. And in fact, that is where the complaints that we're seeing on the ground are. The suits being brought in just allege that there are excessive fees and that there are reasons to think the fees are excessive. That's actually what the practice is playing out on the ground, and I think the practice is playing out on the ground that way because of the constraints we've been talking about today. So those are not ones that in any circumstance would raise the necessity of talking about affirmative defenses. That is our view. Obviously, the Second Circuit disagrees with us. Yes, yes, yes. Right. Yes. That's exactly our view. Okay, you were going to go on and tell me about Box 3? Maybe not. I'm happy to. Box 3 relates to the quality of the services. That's what the Second Circuit held. The Second Circuit held that it doesn't matter all this information that you've included about how excessive these fees are. This might be the Cadillac of record-keeping plans. And if it's the Cadillac of record-keeping plans, then those fees were justified. And the problem is that petitioners have no way of knowing if it's the Cadillac of record-keeping plans. But I take it that as you survey the litigation here, you're saying that most of these complaints or all of these complaints are Box 2 complaints, not the kind of bare-bones complaints that would suggest some special need to do ICBAL maneuvers. That's right. Those are the ones we're seeing, and we haven't seen respondents identify any bare-bones complaints, including in the Eighth Circuit, which has been applying this rule that petitioners are advocating for for 15 years. And we think that's because of the constraints that are already operating. Thank you. Mr. Schwartz? Excuse me very briefly. We got cut off because of the red light. But I didn't want to rain on your ICBAL parade too much. It does seem to me the 7A argument's not completely out of left field here. They're generally disfavored, as I remember, from practice. But one of the exceptions is when you have an affirmative defense that's pled in the answer, sometimes the district judge will say, I want to see the reply. And it happens a lot in qualified immunity, I believe, in particular. And then once you have a pled affirmative defense, a particular one, not just a laundry list, as Justice Alito said, then you might be able to twickball it, it seems to me. What do you think of that? I agree with you, and I think your right to recognize that this is not some arcane rule of procedure. It does come up. It's pretty arcane, but it's not wholly unknown in civil practice when there's an affirmative defense. I had to do it. I remember it. And you've got to plead facts. And then you have something to assess, a real twickball question to answer, I think. Yes, absolutely. I don't want to rain on the parade we're having here, but I will say that the one thing I do want to make clear is at that point you still don't have the burden to do what the Second Circuit held the plaintiffs to hear, which is to, because they've treated the defense as an element of the case. Sure, but you could say as a matter of law, based on the facts pled, no reasonable juror could doubt that this affirmative offense, affirmative defense applied. Okay. A couple questions on a bare-bones complaint, Category 1, of pure prohibited transaction. I think you don't have standing. I think that's the problem with that complaint, as we've been talking about. I was just talking about Justice Sotomayor. But I think before getting to the standing concerns and how it would play out in various contexts, I really just think the most obvious answer is plausibility. But yeah. Okay. And then I think most of the cases in response to your discussion with Justice Kagan are going to involve the claim like that, which is Count 4 here, and other claims that are excessive fees claims, different counts, right? But we saw if they analyzed, the other counts may not go forward, the prohibited transaction count. In other words, I don't know that it's enough to take care of the prohibited transaction count that you're alleging excessive fees in the other counts, or is it enough? Do you understand the question? Let me try and if I haven't corrected you, please correct me. If you're asking if the complaint here was done entirely properly, I don't think it was. The allegations I'm talking about really weren't in the right place in my view. They weren't related to Count 4, correct? To the prohibited transaction claims. However, the Second Circuit did consider them in its analysis, because it didn't apply that sort of level of formalism and still found that they were not enough. And I think that's a critical piece where we diverge from the Second Circuit. We absolutely do think it was enough here. Let me make sure I have that. That sounded important. You think what was enough? The Second Circuit said even if you consider all of the allegations in the complaint here... At the end of the analysis of Count 4, it had a little tack on, right? Yes. Even if you consider that all of the allegations plaintiffs made here about the fees being far above the benchmark, about the fact that the plan didn't engage in a competitive bid process, and about the fact that they used two record keepers and they could have used more, that would not be enough, because the petitioners haven't shown that those excessive fees weren't justified by the quality of the services provided. In that part of the analysis, we strongly disagree. To get past a motion to dismiss. Exactly. Right. So the point, and this is where, to Justice Kagan's point earlier, about three-quarters of the way, at least on the pleading standard, I think you're 99% of the way, but respondent will obviously address that, which is you have to allege something suggesting unreasonableness of the fees and somehow get that in, at least if, as Justice Gorsuch says, it's been put into play at the motion at the pleading stage, correct? Another way of looking at this is sort of on the face of the complaint. Have you pled yourself out of court? That's another way of thinking about it, and I think if you just aren't doing anything to show that these fees are not obviously reasonable, you may be in that category of claims. Good. Thank you. Justice Barrett? Justice Jackson? I guess I'm wondering, is this case really about what needs to be pled, and do we need to say that? I thought the government's basic position, or at least petitioner's, was that the problem with the Second Circuit's view was that it didn't recognize that the exemptions are, in fact, affirmative defenses, and instead treated them as elements, and that it would be enough, and maybe I'm wrong about this now, given all the conversation that we've had, but that it would be enough for the court to say these are affirmative defenses, they are not elements, therefore the burden is on the defendant to establish them. I didn't know that this was an Iqbal Twombly case where the court was being called upon to determine what the plaintiff had to do, as opposed to determining that defendant bore the burden of establishing these exemptions. I entirely understand where you're coming from. I think to resolve the elements question, all you need to hold is that these exemptions are, in fact, affirmative defenses and not elements of the prohibitions, for all the reasons you heard already this morning. However, I do think a real practical concern has been raised by the bench. It hasn't materialized yet. We haven't seen it in the Eighth Circuit, and I think that the government has offered an option for thinking about how district courts will be dealing with complaints that raise those concerns if they were to materialize in the future. Whether the court decides to write that in an opinion and offer that guidance to lower courts, obviously, I leave to the court, but it is an option available to ensure against this concern that respondents have raised. But even if you disagree with the government on that, even if you don't think that that's an appropriate use of Iqbal and Twombly, it still wouldn't counsel in favor of adopting respondents' approach, which is a misreading of the statutory text. It doesn't account for the other party and interest transactions. It doesn't account for the other exemptions, and it raises its own pragmatic concerns. And we wouldn't have to say those other things to resolve the exemptions question that was presented in this case. Yes. The other things that you referred to are really only in response to respondents' pragmatic concerns. Respondents are saying, don't do what you just said. Don't resolve the case along the straightforward NICHON, ADA, Corning Glass. Don't resolve this case along those lines because of these pragmatic concerns. And to the extent the court shares those concerns, we have offered that framework as a helpful tool. Thank you. Thank you, counsel. Mr. Harsky? Mr. Chief Justice, and may it please the court, petitioner's view is that pleading the mere fact of a service provider transaction defeats a motion to dismiss and a case could go forward. That can't possibly be right. If we look at this statute, it is unique, section 1106A, because it covers an incredibly broad array of innocent beneficial conduct. In fact, ERISA separately requires and encourages hiring service providers. Section 1106A thus has to be read together with section 1108 to limit this cause of action to culpable conduct. And we know that in part because section 1106A has this cross-reference to section 1108, which says accept as provided in section 1108. You know, tellingly, there are two different parts of 1106 here. There's A, which includes all of this innocent conduct, and B, which includes only self-dealing conduct. And that cross-reference isn't in section 1106B. It has to be doing some work textually, and it doesn't under petitioner's provision. If you look at all of this together, it shows that Congress's intent was to define the cause of action as not just a service provider transaction, but one where there's some wrongful conduct, where the services are unnecessary or the fees are unreasonable. And under petitioner's view, all a plaintiff has to do is plead the mere fact of a transaction, no allegation of wrongful conduct. It automatically opens the door to expensive discovery. The cost is disproportionately borne by defendants. It would force settlements of meritless litigation. It has in some of these university cases. The ultimate result would be to hurt planned participants and beneficiaries. The government recognizes that that is an intolerable result, and I'm happy to discuss why its proposed solutions don't make sense. But the bottom line is the Second Circuit got it right, and this Court should affirm. I welcome the Court's questions. What should be planned? So here it's that the fiduciary caused the plan to enter into a transaction with a party in interest, which a service provider is, and either that the services were unnecessary or that the fees are unreasonable. I mean, there was never any question in this case about what exemption might apply, this idea that petitioners say, oh, we don't know what exemption might apply. I think everyone thought that was obvious, and the government seems to agree because they say that they have to plead unreasonable fees too. So, you know, it's just a question of can they just come to court and say service provider transaction with nothing wrong with it as opposed to service provider transaction with some kind of wrongdoing that's in section 1108. And we think, you know, this Court's decisions in Iqbal and Twombly, you know, make clear. If you come to court, you've got to have done some investigation and have done some, you know, have some plausible allegation of wrongdoing. And it just makes it easier for the laws of action to go forward with no allegations of wrongdoing. What is your position on who bears the burden of proving the unnecessary and unreasonable fees? The plaintiffs, because it's an element, and so they would bear the burden. So you disagree that it's an affirmative defense, that the exemptions in 1108 are affirmative defenses? For section 1106 claims, they are elements of the claim. They are not affirmative defenses. The burden is on the plaintiff to plead them, and that's the question What do we do about the structural clues in the statute that the other side explains that this is a pretty common way in which statutes are set up, that you have prohibitions and then you have exemptions, and that we ordinarily say the burdens apply in the way that they are articulating. And you don't normally see elements in this way. That's right, but this Court has many exceptions that are elements, and the question it asks is, do you need the exception to define the wrongful conduct? And Cook was a case like that, but there's a series of a whole bunch of other cases. Are all 21 exemptions elements in your view? And then what do we do about the information asymmetry, the fact that plaintiffs could not possibly know many of them? Well, the plaintiff only has to plead the one that's relevant on the facts of the case, and I think it helps to think that a case comes to a court to challenge, a plaintiff is challenging a particular transaction, either it's a service provider contract, or it's a certain type of buying of employer stock, or something else, and the different exemptions apply to different factual circumstances. And as I think was discussed... But do they have to be consistent with respect to the burden that you say falls on the plaintiff? Are they all elements, all 21 exceptions? With respect to 1106A claims, which include the exemption and otherwise would be only innocuous conduct, then yes, the relevant exception in section 1108 would be an affirmative defense, but not all of them would be relevant in every case on the facts. And I think you can think about this in terms of what a plaintiff has to plead to go forward with a complaint. I'm sorry, you said some of them are affirmative defenses? I said that a plaintiff would have to plead facts regarding the transaction, the type of transaction that's applicable in their case. So, for example, there are some that involve block trades or cross trades or buying employer stock, and no one was doing any of those things here, so there's no requirement to plead those kind of facts. The plaintiff's burden is not to plead legal conclusions, but to plead facts that show an entitlement... No, I understand the plaintiff's burden generally. I'm just trying to understand your theory about whether all of the 1108 exemptions, all of them, become elements in the 1106 context. In 1106A, which is the first part of the statute that is incredibly broad. It includes every kind of transaction you could imagine with a plan. The only thing that the petitioners say is exempted is the thing that this court exempted in the Lockheed v. Spink decision, which is paying benefits to a beneficiary. But it covers pretty much everything else in the world. The definition of party and interest is literally in everyone and their mother provision. And so this broad range of transactions has to be understood with respect to the exemptions in Section 1108. And yes, they would be elements as applied based on the facts of the case. But you just plead the facts that are relevant to the transaction at issue. And so for this transaction there was never any question that what was at issue was a service provider transaction. The exception that was relevant was the one for reasonable fees, necessary fees, etc. And if for some reason there was a case in which a plaintiff pleaded and did not include a relevant exemption, well, of course... Can I ask you about potential problems for other statutes that are created in this same way? I mean, do we have to worry that if we're suddenly saying that the exemptions in this structure are elements that we're going to implicate things like the Federal Arbitration Act, which has a similar dynamic? I don't think it's a problem because this court considers each case and each statute as it comes. That's what it has been doing since the decision in Cook where it said, look, if we look at something and it's called an exemption and it's in a separate provision, we probably would think it's an affirmative defense, but there's some circumstances in which we don't. Say if there's a cross-reference to the provision or there's some other way that it's directly incorporated. Or, for example, if the conduct that is in the initial prohibition covers so much beneficial, innocuous conduct that you think, we can't define the wrongful thing that Congress was trying to get at without using the exemption. And that's the inquiry that this court has done. Do you think this is a class of one? That this is the only statute we're going to find where it's going to satisfy your requirements? As I understood it, you said you need the cross-reference and you need the fact. And it's a fair point that this statute, the 1106, covers a vast amount of conduct and a significant amount of beneficial conduct. Is this a category of one are you basically saying that we should create? Well, I think the court has already found circumstances like this. Not a lot. Not a lot. But in the history of the court's opinion, there have been other times the court has found exemptions to be elements. The Vuitch case, Berman, Ruin, Ledbetter, Britton, a number of cases. The Second Circuit also relied on a Fair Debt Collections Practices Act case. See, I think I might find it sort of a happier rule if you had just said it's a category of one.  what you're saying is I mean, the cross-reference there are cross-references like this all the time, which you wouldn't think preclude the typical rule affirmative defense structure. And then you're saying, well, we should consider how much legitimate conduct a particular provision incorporates. That seems like a very loosey-goosey inquiry to me. How much do you need? At what point do you get over the line? It seems as though you're asking us to distinguish among statutes in ways we shouldn't be doing. Well, what I was suggesting and hoping to give you comfort, Justice Kagan, was that this court already has this method of statutory interpretation where it looks at these factors and comes to the right answer. And there have not been a lot of cases where there are exemptions that have been found to be elements. And so I thought that it might give the court comfort to know that this is something that the court has been doing for decades and decades and centuries and it hasn't been a problem. It's just in this particular context, the statute really can't be understood without reference to the exemptions. Good word, context. So you're saying a statute like this, structured like this, can sometimes be read to mean elements, sometimes be read, more often be read to be affirmative defenses. And how do we tell? And the context would seem to be key on that. And some of the concerns that we've been discussing or I've been raising, the amicus briefs raised, others have raised, would suggest that the context here suggests it doesn't make much sense to read this 1106A that way. Right. So I'd point the court to four factors. One, the incredible breadth of Section 1106A, which reaches so much deeper than that. You have the cross reference which says, okay, we don't have to read it by itself. We're being told that we should read it with Section 1108, which is what limits it to the wrongful conduct. And then you don't see that cross reference in Section 1106B, which is the one that defines only wrongful conduct, only transactions that involve self-interested conduct. So you think, I've got to give some meaning to that language that's in 1106A, which is a cross reference, but not in 1106B. Petitioner's view does not give any meaning to that language. It is superfluous. And then the fourth thing I think about is that there are other parts of ERISA where Congress either encouraged or expressly required the use of service providers, and I think to myself, well, Congress said that plans have to do this, and every plan does it, so it would make no sense at all to say that Congress just defined the cause of action as using a service provider. If I put that all together, I'd have to come out that this would be part of the... Well, on the context, you're pulling in the other statutory provisions, too. I think that fourth point's pretty important. And then another point, I just want to be crystal clear on this, because the other side says, well, what about the insider transactions? And those are 1106B, correct? So 1106B are when the fiduciary has conflicts in interest, self-dealing, those are all on their face, bad transactions. I understand the argument that the other side of the government is to be making is, well, maybe 1106A is also like that, because parties in interest include insiders. But they include a lot of people who aren't involved in conflicted transactions. They include service providers. I mean, it is... The immense breadth of the party in interest definition is hard to describe, but I think the point of that is that you need a way to limit the 1106A provision, and the cross-reference tells you to do it using the exemptions. Another thing that I just might say... I'm sorry. Just to answer Justice Kavanaugh's question more directly, 1106B does not prohibit a plan from leasing or from accepting services from an insider. That's only prohibited by A. Correct. I'm sorry. That's what Justice Kavanaugh was asking. 1106A covers insiders... Right. And 1106 B covers... Can you repeat that? Sure. So, 1106A... You're clarifying it. I think 1106A does... Let's do it in the negative. 1106B does not include an insider doing services at a reasonable price. 1106B does not directly address service provider transactions. So, if I might just back up... So, it doesn't include... You only cover an insider service provider by 1106A. Well, it could. It's just that B is written in broader terms. So, if the B... Just if I could back up. A involves a transaction between the fiduciary or the plan and a party in interest. B involves the fiduciary himself or herself doing something with respect to a plan. And so, B is focused on the fiduciary's conduct, and it could involve dealing with the assets of a plan for his own benefit, in his own account. It could be being on both sides of a transaction or on the side of a transaction that's involved receiving a kickback. So, those things could happen in the context of a service provider transaction. It's just that service provider transactions aren't directly addressed, aren't specifically addressed in section B. They are addressed in section A, but they're not just service provider transactions with insiders. They're transactions with any service provider. It's, you know, any service provider is defined as a party in interest. So, what is your cross-reference argument? I mean, why isn't the conclusion that the cross-reference in A is just saying that the exemptions can apply in this world of service providers, and it can't when a fiduciary is dealing, self-dealing. This is, like, a more significant thing, and we're not going to allow it. Because section 1108 already says that its exemptions apply to all of 1106. It says that in four or five or six different places that are cited in the brief. So, 1108 by itself says that its exemptions apply to all of 1106. And so you have this extra language in 1106A. Yeah, but we don't know which language is extra, right? We don't know whether it was just sort of a drafting mistake on Congress's part with respect to 1108 to say that all of it applies when they really were not applying it to B, 1106B. I mean, I just don't know that we can draw the conclusion that something is work with a cross-reference that leads to the conclusion that you want us to draw. Well, it's not just the cross-reference. It's the structure of the statute and the rest of it, and the other factors that I was discussing with Justice Kavanaugh. But I do think that it's telling that the cross-reference is in 1106A. It is not in 1106B. The court, of course, looks at the text very carefully and tries to give meaning to the text. And the only party here that's giving meaning to that text in 1106A is us. If you want to disregard that text, we wouldn't advise that, particularly because there are other parts of ERISA, like the parts that require the use of service providers. What do you think about the principle that the Solicitor General put forward, that the fiduciary generally carries the burden to plead and prove the reasonableness of their actions, and that that's really what is underlying the structure of this? I don't think that that's true. I don't think that the law of trust said that, and I don't think that that's something that ERISA says, particularly in the context of service provider transactions. Now, this case is not about the burden of proof. This complaint got dismissed at the pleading stage, so the question the Second Circuit had to decide was, you know, who has the burden and what is it at the pleading stage? What does a plaintiff have to plead to go forward past a motion to dismiss and into discovery to allow a case to go forward? It's been suggested that the concerns that seem to have animated the Second Circuit were unfounded or at least overblown for, I count, six reasons, and it would be helpful if you could explain why you think they are insufficient. So one is Rule 7 of the Rules of Civil Procedure. The other, which I really don't exactly understand, is the idea that Box B complaints are required but would be sufficient. Another one is standing expedited discovery coupled with a motion for summary judgment, fee-shifting sanctions. Why are they not sufficient? Right, because the rule is that a plaintiff has to come to court and plead the elements and doesn't have to plead affirmative defenses. Now, if the court, and that's how Iqbal and Twombly are understood, that's what it means to bring a claim to court and plead facts to show an entitlement to relief. It's entitlement to relief on the elements. Okay, so what about the Rule 7 workaround? So we think that that is kind of convoluted and discretionary and that's the problem with it. First of all, there would not be an opportunity to evaluate or dismiss the case on motion to dismiss because Rule 7 just applies to an answer. So the court has discretion about whether the court can ask for a reply brief or not. So I guess what the government is thinking is, the plaintiff pleads the mere fact of the service provider transaction, the defendant says, no, it is for reasonable fees and necessary services, and then at that point, the court should exercise its discretion to require the plaintiff to plead additional facts to show that the fees are unreasonable or the service is unnecessary. The problem with that is that it's discretionary. A plaintiff could go to a district court that's favorable. The district court would say, I don't want to do that. And then it's off to discovery and off to summary judgment. Well, could we say that in the particular circumstances here, it would be an abuse of discretion for the district court not to follow that procedure? The court absolutely could say that. I guess my suggestion would be is that the court should be very clear if that's what the court wants because that's not the way that things happen now with respect to Rule 7. And so the court would hopefully say that in those circumstances, in the case of a service provider transaction, that if the defendant alleges that the fees were reasonable, the services were necessary, something in Section 1108, that then the district court absolutely should require the plaintiff to respond and plead facts to show, plausibly show, that the fees were unreasonable. Our bottom line, which I understand to be the same as the government's bottom line, although I'm not entirely sure, is that the plaintiff should not be able to just come to court and say there was a service provider transaction, that's bad, we're off to the races with a lawsuit. What about standing and expedited discovery coupled with a summary judgment? I will address each of those, but let me just say, none of these supposed solutions or guardrails are working now in the district courts, and that would be before the court announced a rule that you could perhaps just go in with a service provider transaction. And just to one point on that, you know, there have been two dozen lawsuits that have been filed against university plans. In none of them had the court found that the plaintiff succeeded on the merits. This has been like millions of dollars that these universities have spent on discovery, and individuals who've been named personally and had to live under a cloud for years and years. So this idea that there are these great guardrails that are going to solve that problem, that's not happening now, and that's before petitioner's position gets accepted. But to specifically answer your question, I don't know that standing is a solution, because establishing an injury for standing is different from establishing an entitlement to relief under a cause of action. I don't know what injury a plaintiff might claim. I mean, I think petitioner's theory is that the mere fact of paying money to a service provider is an injury, because Congress decided that that was bad, or at least presumptively bad. So now there's been a suggestion that the injury would be unreasonable fees, but that to me gets us back to, well, aren't the unreasonable fees part of the elements of the cause of action? So there's also the possibility of jurisdictional discovery in standing, which makes it seem to me like not a very great solution. And I guess the last thing I would say on that is if there is a standing problem or some other constitutional problem with the statutory interpretation that petitioners are suggesting, that would be a good reason not to do that thing and to take the other reading of the statute, which is much more reasonable. I mean, nearly every court that's looked at this, and, you know, apparently the solicitor generals say, petitioner's position just can't be right. That just cannot be right, and there has to be a way to make sure that the plaintiffs have some burden to please something more. And there's a really obvious way to do that, which is to say, well, in this circumstance, we understand that Section 1108 helps to define the statute, but this is actually something that the plaintiffs have to plead. And I, just to get back to a point Justice Kagan made, I don't think it would be a big deal or weird to do that, because, you know, this court takes each case as it comes to it. It's not like it has had a lot of interpretive questions about Section 1106A, but the last time it did in Lockheed v. Spink, there was another plaintiff that came in and was suggesting a reading of Section 1106A that seemed kind of facially just crazy. You can't do this. You can't say 1106A prohibits a plan from paying benefits to beneficiaries. But the language of Section 1106A was so broad that it seemed like it could cover it. And the court said, we're not going to do that. We're going to read the particular provision at issue in 1106A to not allow that result. And that's exactly what we're asking here. And just in terms of the experience, in terms of the lower courts, these prohibited transaction cases do not come up very often now. There's maybe a handful of factual circumstances that have been litigated in the Courts of Appeals that involve fees for services, participant loans, some cases with buying employer stock or property, like employee stock ownership cases, things like that. There's kind of a handful of these. I don't think any of them have led to circuit splits. I don't think that there should be much concern about the court adopting a rule that's going to have spillover effects for any of those. And so I guess what we would say is that the court should decide this case just as it decides all of the cases that come to it which is on the language of this particular provision. And we appreciate that the government is trying to help find these solutions to the problems with petitioner's position. But I think at the end of the day, they're not happening. They're not working now. I think they're discretionary. The suggestion about, well, maybe there could be expedited discovery or not much discovery because you could just look at the face of the service provider, the contract, and see if it's good or not good, well, that hasn't been happening in these cases. I mean, there have been experts on both sides to discuss whether the fees are reasonable or not. Discovery has gone on for years and years. These university cases started in 2016, and they're still going on now. So I just would caution the court before thinking that any of those suggested solutions would be real solutions. Could you just go back to the suggested solution of the government? I think you said to Justice Alito, it just doesn't make any sense. But I wasn't quite sure I understood why you thought that. Sure. So if the solution is that a plaintiff has to plead on reasonable fees or unnecessary services, then that is a great result. But we just want that to be clear that that is the obligation that the district courts would enforce. So there are two ways that the government suggests getting there, and they both seem kind of convoluted to us and also have this discretionary aspect that we're concerned about. The first way that the government suggests is on motion to dismiss. The idea would be that in response to a motion to dismiss, that a plaintiff would have to plead additional facts to show that the fees were unreasonable or the services unnecessary. But why would the plaintiff have to plead that because it's not an element? The government says it's an obvious alternative explanation. We think that that misunderstands, for the reasons Justice Gorsuch gave, what the obvious alternative explanation doctrine is. It's like a reason that the element isn't met. Like in an antitrust complaint, the allegation could be, well, a whole bunch of companies did the same thing. But an obvious alternative explanation is, well, they all did the same thing because of market forces, so it wasn't that they did the bad thing, which was a conspiracy. Here, what petitioners define as the bad thing is just the service provider transaction, and the fees being reasonable isn't an alternative explanation for whether there was a service provider transaction or not. It's like an extra fact. Now, if the court wanted to revisit Iqbal and Twombly and say that it also imposes a burden on plaintiffs to negate affirmative defenses, that would be terrific. But it would be, I think, a sea change in the law that would have effects well past this case. So that's there, option one. And then I think we've discussed a little bit more their option two, which was rule seven. So option one was for the motion to dismiss Sage. Right. I was asking about option one. If you feel like you have more to say on rule seven, go ahead. But that was what I wanted to know about. I just think if the court wanted to pursue a rule seven solution, it should please make clear that that is something that district courts have to do because it is discretionary and there's not judicial review of it, and these cases could go on and on and on. I would like to say one other thing, though, about rule seven and this particular case, which is, so assuming that the plaintiffs do have some burden to plead on reasonable fees, we think the Second Circuit correctly found that they didn't plead it here and that this court ordinarily doesn't review that kind of holding, like the application of a legal principle to particular facts, but if it did, it would be clear here that there's no reason for a remand. So just to explain what the Second Circuit did, pleading that fees are unreasonable, of course, is just a legal conclusion, so you need some plausible facts to show why they're unreasonable. Here, there was an allegation that the fees were too high, but there wasn't any allegation of what the services were for or that there were other university plans that had comparable services that had much lower fees, and that's all the Second Circuit was saying. It didn't say anything about Cadillac plans. It just said, like, we don't know if something is too high unless we know what it's for. We need to know what services it's for. Is it more services? Is it fewer services? Is it better services? And that's not a weird rule in the Second Circuit. That's actually the same thing that, like, the 6th, 7th, 8th, 10th circuits have said in these unreasonable fee cases, which is you can't just plead, like, high fees in the abstract and say they're too high. You have to give us some plausible facts as to why they're too high, which are, you know, compare them to something else that's like your plan where they didn't pay those kinds of fees. And so, you know, we think the Second Circuit was exactly right to say that. The only other thing I'll say, just because the government put this in issue, is that, you know, there's no point in a remand in this case because the plaintiffs actually had the opportunity to try to adduce, you know, evidence through years and years of discovery to try to show that the fees were unreasonable. That was, I think as Justice Kavanaugh was suggesting, not on their prohibited transaction claim, but on their claim for breach of the duty of prudence. And so they went through all this discovery, and they were supposed to put forward their best evidence of the fees being unreasonable, and they couldn't do it. They had two experts, but those experts didn't actually compare the fees to the services or to any other plans. And so the District Court and then the Second Circuit said, well, like, you've got no evidence of this. So, I mean, it's not only that we don't think that they properly pleaded it, it's that, like, they've already lost on the merits, and so even if the court decides to do something different from the Second Circuit, you know, we think the rule should be that they have to plead the unreasonable fees, and here, you know, they just didn't. The Second Circuit found they didn't, and it's just not going to matter at the end of the day. So, you know, the bottom line is Petitioner's position is intolerable. Nearly everyone recognizes that. The Second Circuit gave you a sensible solution that's very careful reading of the statutory text and doesn't create superfluous language, accounts for all the other provisions of ERISA, and, you know, we think that you should adopt that approach, and we think you should affirm. Thank you, Counsel. Justice Thomas? On that last point you raised previously, the trial, did you have experts who said why your fees were reasonable? Yes. So it was summary judgment. We had an expert. They had two experts. Both of their experts were found to be unreliable under Daubert's, and then we also had our own expert that explained that Cornell's fees were entirely in line with the other fees charged by other universities. So you may be right on that bottom line. So even if we vacated and remanded and encouraged a Rule 7 or whatever, you would still win downstairs. Correct, but we're suggesting that you shouldn't vacate and remand. No, I know what you want, I'm just saying. Well, I mean, as a practical matter, this case has been going on since 2016, just like these other university cases, and it's time for it to end. Thank you, Counsel. Rebuttal, Mr. Lange? I just have two brief points. The first point was in response to some questions to my friend on the other side about the superfluidity of 1106A and 1106B. Why does it have one and not the other? And I think this Court's opinion in Barton v. Bars is quite instructive on that. It says at page 239, redundancies are common in statutory drafting, sometimes in a congressional effort to be doubly sure. And why would Congress want to be doubly sure here? Because, in fact, Respondent's Brief concedes this point. On page 27 of their rebuttal, it says, as a practical matter, Section 1108's exemptions may apply less often to Section 1106B than to Section 1106A. And I think in response to Justice Kagan, some of your questions about is this a class of one or not, I think it's pretty clear it's not a class of one, and maybe one analogy can help crystallize this point. Imagine you're going to the airport, and you see a sign that says, except as otherwise provided, no liquids, gels, or aerosols. And then you see another sign that says, no firearms on the plane. And then the third sign says, here are the exceptions. I think the except as otherwise provided is just telling the common traveler, well, certainly we don't want most liquids, gels, or aerosols in, but if you have a medical reason, a dietary reason to bring them in, go ahead, make sure you take a look at those exceptions. But there are far fewer exceptions for firearms, and if they do exist, take a look at that, but we don't want to direct you to that list of exemptions. And I think that's just one common instance of the fact that it's not a class of one. I think this leads me to the second and sort of final point I'd like to make, which is, you know, Justice Gorsuch asked quite a bit about ripple effects, and what are the ripple effects of ruling in our favor versus ruling in Respondent's favor? And I think that crystallizes the daylight between our positions. Our position is to ask this Court to read the statutory text as written, and to apply the text as written, using common tools that it sees in terms of the structure of the text, the information and symmetries, common law, trust rules. Respondent's position is not simply to sidestep the text, but to contort it and to distort it in two different ways. The first is to sort of try to stitch together 1106 and 1108. Some of the 1108's exceptions actually become elements, and then you have to plead and prove beyond that. And the second way, second more important way, I think, second and equally important way that Respondents ask you to distort the text is to say, look, we know Congress defined parties of interest. It has all these categories, and we want a little bit of a special carve-out for outside service providers, persons providing services to the plan. But the text doesn't countenance that. And as a practical matter, the Eighth Circuit, the Ninth Circuit, these other courts that have adopted the standard that we advocate, we don't see cases on the ground that suggest that any such solution is needed. So for those reasons, Your Honor, we ask this Court to apply the text as written and to reverse the judgment of the Second Circuit. Thank you, Counsel. The case is submitted.